Today is United States v. Pullen, 17-3194. May it please the court, counsel. My name is Dan Hansmeier. I represent the appellant, Bobby Pullen. I'm from the Kansas Federal Defender's Office. So this case, I think, can go one of two ways. What you guys want to talk about, we have what we briefed in the opening brief, the H-2 issue, which I find fascinating, but maybe you don't. Then we have the F-3 issue, which I guess is part of this case, even though the Certificate of Appellability is on H-2. So that's where we're at. I can tell you procedurally this case is sort of an H-2 case and not an F-3 case because we had an F-3 case, a ward, which we had before here, and that was supposed to be the vehicle in this case, which is supposed to go away. And then ward went away, but it came back. So the panel re-hearing was granted in that case, and we filed the brief in ward last week. So I would prefer to be here on a 2255 F-3 case like John Ward's case, and instead we're here on this 2255 H-2 case, which I think makes it a little confusing. And I think none of that may be relevant. So as far as what the, if somebody wants to direct me to whether they want to talk about 2255 H-2 or not. Okay. Let's start with the first issue, which I mean, I think we've got an issue with regard to United States v. Murphy. Okay, Murphy. Yeah, I know that case. Okay, which you seem to have a problem with the procedure of the district court in considering timeliness after there had been a preliminary determination by the circuit court. We now, and I think Murphy came down after briefing in this case, but would you, can... I don't think you talked about it in any of the supplemental. Yeah, I don't think anybody filed a 28-J letter. I think it came out, but I don't think you talked, nobody talked about it for some reason. Okay, and so should we have, do you concede that Murphy answers the first question against you? Well, actually I think Murphy answers the question for us, because Murphy says that what the district court did in Murphy was use the second gate falls under 2254 B-4 and not 2255 H-2. So I think we're technically right. I still think we're right that a district court can't revisit a 2255 H-2 determination. Now this is really all semantics, because if Murphy is binding precedent, that means the district court, the second gate is 2244 B-4. Okay, you're going way too fast. I can't follow anything you're saying. Okay, I'm sorry. I know this issue way too well. So our position is that as a statutory matter, once this court grants authorization under 2255 H-2, that's all 2255 H-2 does. And we know that because 2255 H-2 is addressed to the Court of Appeals. That's it. And to the extent it incorporates a provision from 2244 B, we know that that's B-3. And we know that because this court has said that. And we also know that because 2244 B-3 is the only provision within 2244 B that talks about certification from this court. So our position is that when the district court in this case used 2255 H-2 as the reason to dismiss the motion, that was wrong. Because only this court considers 2255 H-2. And I think what Murphy says is that we're right. And that what the district court is supposed to do is to use 2244 B-4, which is not 2255 H-2. We need briefing on this. I kind of thought Murphy answered the question. But since we didn't have any briefing from either of you on it and any letters on it, I kind of thought maybe you accepted that it answered the question. But you're telling us it answered the question in your favor. Well, it's in our favor, but not really, right? I mean, we're saying that we've never said that a district court can't do the retroactivity analysis. We've never said that. What we really think is that it happens under 2255 F-3. Okay. But in your brief, you argued that the district court, once COA is granted by the circuit court, the district court has no power to reevaluate that and can't make a determination about whether COA should have been granted. I think that's absolutely correct, yes. Okay. Do you depart from that now after Murphy? I'm trying to understand your position. I'm not sure I understand it either. As I read Murphy, what we do is a preliminary assessment, but then you've got an obligation in the district court to actually show that you're timely. Yes, and we don't dispute that. Okay, so Murphy, with respect to Murphy, I don't know that I can say it any different, to be honest with you, but I guess what I'm saying, we've always said two things. We've said we think this retroactivity analysis falls under F-3, and we think that because of the way the statute's written. And if it didn't fall under F-3, there would be a lot of redundancy, a lot of things that wouldn't make sense, and that's all in the brief. What? There might be things that don't make sense? But then I think the subsidiary thing is 2254B-4, and that is what Murphy uses. As I read Murphy, Murphy is a 2254B-4 case because that's what the district court used to revisit this court's 2255H-2 thing. And we said in our merits brief that if this court sent this case back, 2244B-4 would be an issue for the district court potentially. Now, so I think here's how I would sum it up as far as big picture what all of this means. As I stand here today, I can't win as long as Greer remains good law. I can't win because that answers the question. And on the procedural thing about H-2 and B-4, I don't really ñ it is what it is. Okay. So you are no longer taking the position that the district court couldn't reevaluate the procedural question? The issue in your initial briefing. That was the brief, that first set of briefs. The first issue in your brief. I honestly think Murphy's wrong, but I will concede that it's binding precedent because I think 2244B-4 is a state prisoner petition. It only applies in the state prisoner context, and it shouldn't apply in the federal prisoner context. I'm wrong according to Murphy. Okay. So let's switch off of Murphy and switch now to the merits, what I call the merits. Okay. So we need help. So you need to convince us, as I understand it, that there is Supreme Court authority that dictates a result with respect to the mandatory guidelines. Can we agree that that's the issue here? Yeah. I would use contravenes or invalidates. I think it's this court's, not dictates. So under this court's ñ That's the Supreme Court language, isn't it? Well, I'm just talking about under this court's precedent, in order to overturn circuit precedent, there has to be an intervening Supreme Court decision that contravenes or contradicts or intervenes the reasoning. But even if you did that, you'd still have to. Invalidates, contradicts or invalidates. Let's say you said we've got intervening authority that releases us from Greer. To prevail, you still have to show us that there's a Supreme Court case that dictates a result with respect to the mandatory guidelines. Well, I think we have to show that the rule, the retroactive right announced in Johnson, applies to the mandatory guidelines. That it dictates a result. I don't know where that language comes from. I wouldn't use that language. I don't know what that language is. Can you point to what in Greer, did we use that has now been contradicted by DiMaia? Yes. Which is what I assume you're arguing. The way I read Greer, the entire premise of Greer, is that Johnson applies only to the exact statute at issue in Greer. And I think what DiMaia establishes is that that can't be right. Because DiMaia is very clear that there's, I think, from page 1215 to 1223 of the decision, it is just a straight, I mean, that's what they call the analysis, a straightforward application of Johnson. Johnson tells us what to do. Johnson tells us the result. It really is the United States Supreme Court applying Johnson to a different provision. And wouldn't that be their prerogative when they're sitting on direct appeal to take, they've decided a case in Johnson and then they apply it on direct appeal? That's a little different than what we're doing on collateral review, isn't it? I don't think it is. See, I don't know of anything where there, I don't know that the exact statute approach this Court took in Greer exists. There's four circuits that follow it now, right? Right. But I think if you look at Supreme Court precedent, there's no precedent for it. And I think if you look at the due process vagueness cases, they're great for us. I mean, you have this line of precedent that we cite in our brief where you have a case, Godfrey v. Georgia says that a state statute is unconstitutional. The next habeas case involves a merit loan statute. It's unconstitutional based on Godfrey. Then you have Stringer. It's unconstitutional based on the other two. They're all different statutes. But we don't have a statute here. Does that matter? What do you do with Beckles? I mean, you want to, first of all, you're claiming that it's the rule announced in Johnson, but that we look at DiMaia to help us figure out what that rule is. But don't we also have to look at Beckles? So I think we only look at DiMaia because it's intervening. Well, if I were you, I wouldn't want to look at Beckles either. Well, no, I didn't mean we don't look at Beckles. I think we only look at DiMaia as intervening. It's an intervening decision that contradicts or invalidates Greer. But I think Beckles, so two things about Beckles. One, nobody's ever really said or acknowledged that Beckles was a 2255 that was not dismissed on these procedural grounds. The United States Supreme Court took Beckles, decided on the merits. So if Beckles should have been an F3 case, why didn't anybody say anything? But doesn't Beckles pretty clearly, I mean, in order for us, you know, if this were on direct appeal, which, of course, because it's the mandatory guidelines, we're never going to get one, right? We would be able to do all of the analysis that you're talking about, looking at the law and making our best prediction of what the Supreme Court's going to do with it. In fact, that would be our job to do that. But when we're looking at it on collateral, when we have it before us on a collateral attack, we don't have the same flexibility and we have to wait until the Supreme Court tells us what it's going to do with the guidelines, the mandatory guidelines. At this point, all we know is the Supreme Court has left the issue open. We know the vagueness does not apply to the discretionary guidelines, and we know they didn't decide yet whether vagueness applies to the mandatory guidelines. How can we say that there's some recognized right with respect to the mandatory guidelines? Well, two responses. The first, you can say that because a guideline as mandatory was a statute. It operated as a statute, and we know that based on Booker. That's what Booker says. And we also know that based on United States v. RLC, where the court said the same thing but rooted its analysis in the fact that the guidelines come from statute, 28 U.S.C. 994 creates the guidelines. So they are, in effect, a statute. When they were mandatory, they operated as statutes. That's what Booker says. But on echoes in this idea of an open question that comes from Justice Sotomayor's concurrence, two things on that. One, if Justice Sotomayor really thought it was an open question, that means it has to be answered. And under Greer and Brown and Rabin and all of this stuff, it will never be answered. It's not an open question because there is no vehicle in which to get the question in front of a court. So if it really is an open question, there has to be a vehicle to get it in front of the court. Well, there is a vehicle because we have three cases sitting right now with cert pending before the Supreme Court on this very issue, including Greer. But the issue is the timeliness issue. So if the Supreme Court would have to take the issue, then decide that, you know, the courts of appeals were wrong to address the merits. And the only reason the courts of appeals, the Supreme Court could do that is to say that F3 applies, which is something this court can do. There's no rule that says only the United States Supreme Court can apply 2255-F3. In fact, the district court can do that. This court can do that. In fact, 2255-F3 is directed to district courts. So my time is dwindling. Maybe it was an only open, maybe she, I mean, hard to tell what she meant, but maybe it was an open issue because we weren't talking about the mandatory guidelines. It's just that simple. I mean, I don't understand why. Yeah, I don't either. I don't understand why that statement is now the answer to our question. Yeah. And, I mean, I think when you think of Justice Sotomayor, I think she's going to be on our side. It makes it even weirder. We can't go there. I mean, we could predict that, but we can't predict what the rest of the court is willing to do. Well, I think we're just talking about that. I guess I'm asking that the straight, to me, what's important about DiMaia is what they said about straightforward application. Yes. And I recognize that one of the circuit cases that we've been cited to said, oh, gee, it wasn't straightforward for them because four justices disagreed, but the point is the bottom line holding of it was, hey, we said what we said in Johnson, and this is a straightforward application of it to a statute that's not nearly as close to what we have in the mandatory guidelines. So is your position that that straightforward application that they said in Johnson would be just as easy and maybe easier, at least the way I read your brief, to apply to the mandatory guidelines? Yes. That's absolutely right. And I'm out of time. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Jared Magg on behalf of the United States. My attempt is to not tighten this Gordian knot that we've created here. So let's start with the procedural aspects. Our position, of course, is that district court certainly has the ability under H2 to address the merits of any retroactivity issue. Murphy obviously sanctions that, and I think Murphy falls more in line with what the Seventh Circuit said in Bennett with respect to the dual-gate process. And I think that's fairly clear. And at the end of the day, it gives more respect to the fact that at this level, when the Court is looking at the prima facie side of this, it's not engaging in a robust analysis of retroactivity principles. It doesn't even get to hear from the government. It simply looks at whether or not on its face it appears that there may be a retroactivity issue. And we have a timeliness concern. Right. And there's, yeah, you're bound to a very short period of time to review it. In the course of one year, the court must get hundreds of these, and particularly post-Johnson. So in the context of the district court's ability to visit a more methodical approach to the retroactivity principle, that seems fairly clear, and Murphy appears to finally sanction that in this circuit. And again, that's more in line with what the other circuits are finding, particularly with what the other courts have followed with Bennett in the Seventh Circuit's decision. And we think that that's the proper procedure. So this case rises and falls on that very question. So if you look at it just procedurally, I think the only course this court has, if it has a remedy here, is what does it do under the circumstances. It could stay the opinion based upon what the court now knows is this sort of complex field that exists. As Judge McHugh, as you rightfully note, we may know within the next 24 hours if Greer has been granted. Both Thilo Brown's case and Jason Greer's case were on the court's dock and on Monday. We were hoping they were going to announce it before we came here today, and this argument would last about 15 seconds rather than 15 minutes. Unfortunately, that isn't the case. We're hoping within the next 24 hours we'll know. And I think under those circumstances, both counsel and I would move to stay this matter. Well, assuming we have to decide it, what's your position? What's the rule from Johnson? Well, we think Greer controls. Well, assuming for the moment that we have the ability to reconsider Greer because of DiMaia, what rule do you think was announced in Johnson? Oh, it was strictly to the ACCA. I guess I should have known that would be yours. Yeah, that's somewhat of a rhetorical question for the government, because our position all along is that the court has not at any point indicated that there is a real susceptible challenge on vagueness grounds to the guidelines. We know in Beckles they said no. And I think the question, Judge McHugh, that you sort of point out is that Beckles, if you use the formalistic approach that the defendant wants you to use here, then Beckles should have been decided in their favor, and it wasn't. And quite frankly, I think it's a much harder case, particularly under H-2, because the court- But in fairness, part of the analysis in Beckles was that it was discretionary. That was a big part of the analysis. True. That was the reason, wasn't it? But our point is that under the formalistic approach that they want to apply, that Beckles should come out in their favor as well, because Johnson says this, then it applies both to guidelines and statutes. Our position is no. It does not apply to the guidelines. The court hasn't expressly stated that. And particularly in the H-2 context, it's a much more restrictive situation. Trying to look at it, sort of the overall impact of how we interpret new rules in terms of its effect on EDPA and prisoners who might have claims, one of the things that seems to me is rather than having an unclear rule where people who got in within a year of Johnson get relief, but all the people out there that had no reason to believe the guidelines were covered get no relief. I mean, does it make some sense to have they have to announce a clear rule, a year starts, another year starts, another year starts? I think it's a valid point, but the court has distinguished- Would the government somehow argue that those people don't get a new year? Well, I think the government's position is that the distinct difference between both statutes and the guidelines, because the guidelines don't fix periods of incarceration. Clearly, they said that in Beckles. Whether or not the court believes that the mandatory guidelines don't fix sentences is, I think, a question that is outstanding, and I think that's the core question that the court will have to answer in the context of whether or not they want to grant cert in these cases, is whether or not the mandatory guidelines are so distinctly different than the advisory guidelines that it effectively acts as a statute. And I guess in Beckles, they look at two issues with regard to vagueness, which are the typical ones. One is notice, and pretty clearly said you can't rely on notice because it isn't the guidelines that sets the statutory sentencing range, it's the statute. But what they did talk about is cabining, so that you don't have arbitrary implementation of that. And I guess that's the open question with whether if they're mandatory, is it different? Is the analysis there different between discretionary use of the guidelines and mandatory use of the guidelines? And is that something we can decide in the first instance? Why isn't it just a straightforward application of Johnson? Yes, you could. But you answered that in Greer. The question is whether or not you want to revisit Greer. Again, I'm asking you to assume we can revisit Greer based on DiMaia. Absolutely. They did that in Cross. We certainly agree. Our position certainly is that DiMaia does not control, but nothing prevents the court from addressing it, certainly. So my question is, is there enough difference? Was the court enough focused on the fact that it was discretionary with respect to that second vagueness concern that we can, in this setting on collateral review, make a determination that Johnson dictates a result with regard to the mandatory guidelines? Did that question make sense? No, it makes sense. But I think my answer may not settle well with the court. I think the court would have to remand it to the district court to make that decision. Because we're here on H2, and I think it's the district court's determination, not this court's at this point. If the court wishes to remand it and say, and tell Judge Robinson that she needs to revisit this in light of DiMaia, remember her opinion was pre-DiMaia, and if she wishes to revisit it now under the circumstances, because this court's going to have to say that Mr. Pollan met the discretionary vagueness factor, that the lower court was wrong, and then get to the substantive side of it. I think that does a disservice to the lower court. I think the court, I think you need to give the parties an opportunity and Judge Robinson another opportunity to revisit that issue if the court wishes to, in this case, revisit Greer post-DiMaia. And we would ask that that be the only result in this case, that this court not take up the opportunity to do it sua sponte, under the circumstances, that we get an opportunity to rebrief the issue before the lower court. And I think that would also give an opportunity for the other courts to weigh in. I think it's very clear to everybody that the split that now exists between the Seventh Circuit and the remaining circuits, while lopsided, is now defined. It wasn't as defined three weeks ago when Cross was still on en banc review, but now it's well defined. Well, what bothers me about those well-defined cases is most of them aren't talking about DiMaia, which to me is the only, it changes the landscape again. And I don't know how you can, I don't know how you can not talk about DiMaia when the court said, this is a straightforward application of Johnson. And essentially, if you've got a statute that's identical or something we can treat as a statute, it's identical. It's even closer here than the statute we were looking at. Which, as I understand your question, I guess I'm not asking one. As I understand your question, that's enough reason for the court to grant cert. But we know, based upon what they did in Cross, we know there's defined disparate treatment now between prisoners. We know that. No matter how you play that out. To us, that's enough to at least hope against hope that the court will grant cert in one of these. We don't know if General Francisco has decided whether or not he wishes to appeal Cross on a cert petition. We know our position in most of these cert petitions thus far in Raybon, which has been denied, is that the split really is shallow. There was really no split at all by the time Raybon was denied cert. But now we know the defined split occurred. And we hope within 24 hours, we're going to know. I think if they deny both Brown and Greer, that complicates things significantly. And I would go back to my original position, Judge McHugh, that if the court wishes to revisit this, that you give us an opportunity to remand this back to Judge Robinson. We can thoroughly review this. And I think that there's going to be more case law generated with this. Yeah. One of the problems, I mean, Greer may have become at this point moot because of circumstances. So I'm not sure what they'll do with Greer. But they have another one. So I guess we will find out. Oh, they have multiple. This isn't the only one. And at the same time, and I think it's worth noting here, that this court is going to be faced with multiple panel decisions. Ward is certainly out there. Brigham is out there. Poland is, of course, this case. And that's just Kansas. I can only imagine from the other states, you're going to be faced with multiple panels. And maybe this is a situation both in the F3 and the H2 context that really deserves an en banc review. And we hope that this just fits in line. This is one of the train cars along the tracks. But we think, under the circumstances here, that at most this court will simply remand. I'm sorry, that en banc review, back in Ward there was a request, wasn't there? There was. No, that was pre-dismissal. They asked for re-briefing in Ward for post-Demeyer re-briefing. And the court decided for panel re-hearing rather than en banc review, which is fine. And we certainly considered that. And we'll certainly argue as such. But I think at some point, with the number of opinions that are now stacking up before this court, that the coordination of all of these issues is certainly deserving of a much larger look. And I think in virtually every case, you'll get petitions for en banc review under the circumstances. I think that's a fair statement. Unless the court has time, I'd certainly forfeit the rest of my time. But, again, our position is that at most this court should remand this matter. I don't know. Thank you. Thank you. We will. There are five or six cases that we'll get orders on tomorrow. And I think Judge McHugh makes a good point about some of them might not be good vehicles because I know Greer is already on supervised release. Some of the cases might not be good vehicles because of the underlying priors as well. So I don't know that a cert grant or denial is going to tell us what ultimately is going to happen. I think the court will take the case. But as far as this, I think the suggestion that this case go back to the district court with Greer still on the books doesn't make sense. To reconsider based on DeMaya. That's what I'm asking you. Because if Greer is on the books, the district court has to follow it. Yeah. Right. I don't think the district court can overrule Greer based on DeMaya. Oh, I see. I think this court can do that. Thank you. Thank you. Okay.